## AMERICAN PATENT DIAMOND DOP CO. v. WOOD et al.

(Circuit Court of Appeals, Second Circuit. May 31, 1912.)

### No. 189.

PATENTS (§ 328*)—INVENTION—DIAMOND POLISHING DOP.
 The Loesser and Loesser patent, No. 573,672, for a dop to hold a diamond in position for polishing, is void for lack of invention; also, as limited by the prior art, *held* not infringed if conceded invention.

Appeal from the Circuit Court of the United States for the Eastern District of New York.

Suit in equity by the American Patent Dop Company agianst Rawson L. Wood, St. John Wood, and Harry S. Wood. Decree for complainant, and defendants appeal. Reversed.

For opinion below, see 189 Fed. 391.

Appeal from a decree holding valid and infringed letters patent No. 573,672, granted December 22, 1896, to Edward and Ernest Loesser for improvements in diamond polishing dops.

Prindle & Wright (Edwin J. Prindle, of counsel), for appellants.
Johnson & Galston (Clarence G. Galston, of counsel), for appellee.

Before COXE, WARD, and NOYES, Circuit Judges.

COXE, J. The object of the patentees was to provide a dop in which the diamond can be readily and quickly adjusted for polishing off the facets, table, or culet.

A dop is a tool for holding a diamond against a revolving skive while being polished. Prior to the patent the diamond had usually been held in place by solder and after a facet had been polished it was removed and soldered again in a different position for polishing a new facet. This process was repeated until the polishing was com-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pleted. The patentees disclose a different method of holding the diamond in position during the polishing process. Instead of using solder, they hold it in position on the seat of the dop by a bifurcated finger, thus giving it a three-point contact.

The claims in controversy are as follows:

"2. A diamond polishing dop, comprising a head provided with an inclined seat and having means for applying it to a diamond-polishing tool, a bifurcated holding-finger adapted, in connection with said seat, to establish three points of contact with the diamond, and means for securing and adjusting the holding-finger, substantially as set forth.

"3. A diamond polishing dop, comprising a head having a recess and provided with means for application to a diamond polishing tool, a removable shoe having a flange fitting said recess and provided with a cavity, and means for engaging the diamond and holding the same in the cavity of said shoe."

We are of the opinion that the claims are invalid for lack of invention. The device is so simple that we cannot avoid the conclusion that had it been used for holding any other object than a diamond, no one would have imagined that it required the genius of the inventor to produce it. If, for instance, it had been a metal bead, or a glass ornament, which was held in place by a fork, so that the polishing disk could reach conveniently the faces to be polished, it is hardly probable that one who used means so obvious would be accorded the rewards of an inventor.

The method of polishing by means of a dop holding the diamond against the revolving skive was old at the time the patent was applied for. All that the patentees did was to provide different means for holding the gem. They were not, however, the first to substitute a metallic holder for the solder previously in use.

Two months prior to the date of the complainant's patent, Strasburger had obtained a patent for holding diamonds by similar means while being polished. He says:

"A gem L to be polished is mounted in the end of the gem-carrier. A facet of the gem is selected for the stone N to work upon. If the facet be at an angle to the horizontal plane, the setscrew F is manipulated to loosen the grip of the socket or adjusting-head upon the holder G, and the holder is thereupon swung until the desired inclination has been given to the gem-carrier. This inclination may be determined beforehand and the proper marks in the scale of the holder brought into registry with the indices of the adjusting-head. When the holder has been properly adjusted, the thumb-screw F is adjusted to clamp the said holder tightly in the adjusting-head C, so that the gem will be held in the proper position for polishing the facet selected. It will be noted that the gem may be carried in the gem-carrier in any suitable manner; but it is preferable in some instances to carry it by bringing the end of the prong n upon the 'table' of the gem and to screw the screw-collar o down tightly."

This device does not anticipate the Loesser claims, but it shows a method of holding the diamond in place, while being polished, by means of a metal finger or prong. It is argued that unless the socket in which the diamond is seated is made to conform to it with accuracy, the device will be deficient in security. It is argued, also, that the obvious way to remove this difficulty would be to embed the diamond in cement or other plastic material, but we think that another obvious way would be to divide the finger into two prongs at its end or, in

other words, to do what the Loessers did. If the Strasburger device did not hold the diamond with sufficient firmness it surely required only the skill of the calling to make it so hold. If one finger did not engage the diamond with sufficient firmness, ordinary common sense would suggest adding another finger, or a bifurcated finger, especially so as the use of a bifurcated clamp for such purposes was old in similar arts.

The Hessels patents do not relate to the art of polishing, but they do show a device for holding the diamond firmly while being cut which would be equally available for holding it while being polished. Hessels says:

"Heretofore it has not been believed to be possible to hold the diamonds in any other manner than by means of tin-solder; but I have discovered by practical tests that the diamonds may also be firmly and securely held in position by properly-constructed chucks, by the use of which the objections heretofore stated are fully avoided and a considerable saving of time and labor in cutting the diamonds obtained."

He also says:

"By means of these chucks the diamond to be cut may be exposed to the action of the upper cutting diamond in any desired position, so as to cut any of its facets, the back facets being first cut and finally the front facets. By the adjustability of the chuck sockets the proper angle of inclination for the facets and the proper direction of their grain toward the cutting-diamond is obtained, while by the chucks the setting of the diamond so as to cut one facet after the other is accomplished quickly and without the tedious soldering of the same into the old-style dops."

As we are, therefore, of the opinion that the claims in controversy do not disclose invention over the prior art, it is unnecessary to discuss the subject of the infringement. We may say, however, that if the claims can be sustained at all, they must be confined to the precise structure described, and the prior art does not admit of a broad construction. So limited, the defendants do not infringe. They do not have the bifurcated holding finger, or means for securing and adjusting the holding finger, as provided in the second claim. Neither do they have a removable shoe having a flange fitting the recess in the head and provided with a cavity, as stated in the third claim. If the claims be construed broadly enough to include the defendant's structure, they are fully met by the prior art.

The decree is reversed with costs.